UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLINTON C. WILLIAMS,

    Plaintiff,

v.                                                             Case No. 08-10408

KEVIN LANGDON, PAUL D. JENSEN,     HONORABLE AVERN COHN
STEVAN DAMJANOVIC, STUART
HUTCHINGS, ED SCHRIEBER, and
MACO STEWART,

    Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING COMPLAINT AGAINST ALL SERVED DEFENDANTS

I. Introduction

This is a dispute involving claims of libel, intentional interference with an advantageous relationship, and breach of contract. Plaintiff Clinton C. Williams (Williams) is suing defendants Kevin Langdon (Langdon), Paul D. Jensen (Jensen), Stevan Damjanovic (Damjanovic), Stuart Hutchings (Hutchings), Ed Schreiber (Schreiber), and Maco Stewart (Stewart) for actions connected with all of the parties' membership in the Triple Nine Society (TNS). Williams essentially says that defendants libeled him via the Internet through the TNS membership website and magazine.

Before the Court are motions to dismiss for lack of personal jurisdiction by

Hutching, Jensen, Langdon,[1] Schreiber, and Stewart.[2] The Court held a hearing on the motions, after which Williams filed a supplemental brief.[3]

II. Background

Williams is a Michigan citizen. Langdon is a California citizen. Jensen is a Minnesota citizen. Damjanovic is a citizen of the nation of Serbia. Hutchings is a Georgia citizen. Schreiber is a Colorado citizen. Stewart is a New Mexico citizen. All of them are members of the TNS, an unincorporated association whose membership is limited to individuals testing at the 99.9 percentile of IQ. Williams helped found the TNS in 1978. Membership is worldwide and all members pay dues. While at some point members may have paid dues to an account in Michigan, it is not clear where such dues are currently paid. Membership rights include (1) receiving the TNS printed publication, Vidya, and (2) access to and participation on its semi-private website, www.triplenine.org.

Based on information obtained from the website, it appears that the TNS is

---

[1] Langdon also moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Because the Court concludes that personal jurisdiction is lacking, it does not reach the issue of whether the complaint states a claim upon which relief may be granted.

[2] Schreiber and Stewart did not file formal motions. However, they appeared at the hearing and joined in the other defendants' motions. Williams' counsel had an opportunity to argue the personal jurisdiction was established. As such, the Court considers whether personal jurisdiction over Schreiber and Stewart exists.

[3] Jensen filed an objection to Williams' supplemental brief, arguing that the Court neither asked for such a filing nor do the rules permit a filing. However, the Court at the hearing invited Williams' counsel to submit supporting authority. Hutchings filed a response to Williams' supplemental brief, again arguing that personal jurisdiction is lacking. The Court accepts these filings in the interests of maintaining a complete record.

governed by a constitution.  The Preamble of the TNS constitution states its purpose as:

> The Triple Nine Society is committed to friendship, communication, the adventure of intellectual exploration, and a greater realization of individual potentials.  It neither sanctions the imposition of one person's philosophy on another nor subscribes to any particular philosophy for its members.  It will strive to avoid the insularity of mere exclusiveness. The guiding principle of the Society is democratic and collegial rather than hierarchical. The Society will remain open to innovation and evolution.

The TNS is governed by an Executive Committee, which is chaired by a Regent. Some, but not all, of the named defendants are listed as officers.  Jensen is listed as Regent and as an Auxiliary Officer called a "Psychometrician."  Langdon is listed as Ombudsman and Polling Committee Chairperson.  Schreiber is listed as Membership Officer.  Damjanovic, Hutchings, and Stewart are not listed as officers.

Williams was an active member of the TNS and served in various appointed officer positions, including Membership Officer, Financial Officer, Promotions, Acting Regent and editor of Vidya.

In 2005, Williams was appointed to receive and disburse some funds on behalf of the TNS.  At that time, the TNS, according to the complaint, "had no legal structure" and therefore could not open a bank account in its name.  Williams therefore filed a certificate of assumed name and opened a bank account in Michigan.  Williams says at all times the funds in the account were used for the benefit of the TNS.

On March 16, 2007, Jensen posted a statement on the TNS website that Williams had "comingled" TNS funds with his personal account, referencing the bank account.  This statement apparently caused a flurry of discussion on the TNS website. Williams demanded that the statements and postings be removed and asked for an

audit of the bank account. Williams says an audit was refused. In March and April 2007, Williams, through his attorney, contacted Jensen, as Regent, and Langdon, as Ombudsman of the TNS, to remove the allegedly defamatory postings and publish a retraction. These requests were refused. Williams says the defamatory postings continued.

On March 18, 2007, for example, Stewart posted a comment about the bank account.

On June 17, 2007, Williams sent registered letters to Jensen and Langdon, which were returned unclaimed.

On July 2, 2007, the Executive Committee passed a resolution which Williams says further defamed him. The resolution, attached to the complaint, reads in part:

> . . . Williams has taken the name of the Triple Nine Society and created a corporation that he has represented to Mensa as being the true Triple Nine Society. . . . Because of his refusal to cease and desist in this infringement . . . he will be prevented from having access to the triplenine discussion list, the ExCom discussion list, and the internal/members only view of the triplenine.org website until such time as the ExCom ascertains that Triple Nine Society, Inc. of Michigan has been dissolved . . .

The motion was proposed by Stewart. Defendants Stewart, Langdon, Hutchings, Schreiber, Damjanovic and Jensen voted yes.

After the motion was passed, Damjanovic, as editor of Vidya, authored an article entitled "Initiative to Expel Clint C. Williams," which Williams claims is also defamatory. More information regarding expelling Williams was published in a subsequent edition of Vidya, edited by Langdon. Jensen also wrote a Regent's report which appeared in Vidya regarding Williams' activities. Langdon also wrote an article in Vidya, accusing

Williams of, inter alia, harassing members and spamming the membership. Williams, as a result of a balloting vote, was eventually expelled from the TNS.

On January 29, 2008, Williams sued defendants, claiming (1) defamation, (2) intentional interference with advantageous relationship, and (3) breach of contract.

As noted above, before the Court Hutchings,' Jensen's, and Langdon's motion to dismiss for lack of personal jurisdiction. At the hearing, defendants Ed Schreiber and Maco Stewart joined in the motions and adopted defendants' arguments as to personal jurisdiction. The remaining defendant, Stevan Damjanovic, has not been served. Thus, all of the defendants with the exception of Damjanovic have moved to dismiss for lack of personal jurisdiction.

### III. Legal Standards

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). When ruling on a jurisdictional motion to dismiss, the court considers the pleadings and affidavits in a light most favorable to the plaintiff. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir.1998). The plaintiff must make a prima facie showing of jurisdiction. Id. Further, the court does not weigh the controverting assertions of the party seeking dismissal. Id. However, if the written submissions raise disputed issues of fact that would defeat jurisdiction or seem to require determinations of credibility, the court has the discretion to order an evidentiary hearing. Id. The court may also order discovery broad enough to allow the parties to prepare for the

evidentiary hearing. Id. At the evidentiary hearing, the plaintiff must establish jurisdiction by a preponderance of the evidence. Id.

"A court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." Intera Corporation v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). The court's exercise of jurisdiction comports with due process "when the defendant has sufficient minimum contacts such that traditional notions of fair play and substantial justice are not offended." Id. "

When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court need only determine whether the assertion of personal jurisdiction violates constitutional due process." Id. at 616 (citing Aristech Chem. International v. Acrylic Fabricators, 138 F.3d 624, 627 (6th Cir.1998)). Michigan's limited personal jurisdiction provisions extends the state's jurisdiction to the limits permitted by due process requirements, thus this Court only performs one inquiry under the Due Process Clause. Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1150 (6th Cir.1990); and Bridgeport Music, Inc. v. Still N the Water Pub., 327 F.3d 472, 477 (6th Cir.2003).

Here, Williams does not assert that general jurisdiction is established, but rather asserts that limited personal jurisdiction is established over defendants consistent with Michigan's Long Arm Statute, M.C.L.A. § 600.705, which provides:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the

6

> individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

MICH. COMP. LAWS. ANN. § 600.705 (West 2007).

Furthermore, Williams points out that under M.C.R. 2.201(C)(3) "A(n) . . . unincorporated voluntary association having a distinguishing name may sue or be sued in its . . . association name, in the names of any of its members designated as such, or both." MICH. COMP. ANN. LAWS § 2.201(C)(3) (West 2003) Williams also cites Fredstrom v. Giroux Post, No. 11 of American Legion, 94 F.Supp. 983 (W.D. Mich. 1951). The court in Fredstrom held that although the unincorporated voluntary association could be sued, it did not take away the right of an individual to sue members of the association. Id. at 984. In this case, however, the TNS is not named as a defendant. Moreover, while Williams may be able to sue the members of the TNS, the ability to sue them does not mean that personal jurisdiction is established. In other

words, defendants still need to meet the Michigan Long Arm Statute requirements and comport with due process in order to be subject to personal jurisdiction in Michigan.

The Sixth Circuit has set forth a three part test for determining whether, consistent with due process, a court may exercise limited personal jurisdiction: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Youn, 324 F.3d at 418 (citing Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir.1968)).

Purposeful availment is more than a passive availment of the forum state's opportunities, it is a deliberate undertaking. Bridgeport Music, 327 F.3d at 478. "The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." Id. (citations omitted) (emphasis original). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person." Id. (citation omitted). "The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." Id.

IV. Analysis

Because each defendant has moved for dismissal based on lack of personal jurisdiction to all of Williams' claims, each of the defendant's basis for lack of jurisdiction is analyzed individually as follows:

A. Personal Jurisdiction over Stuart Hutchings

1. Hutchings' Arguments

Hutchings argues that (1) Hutchings did not commit an intentional tort, (2) there could not have been any harm to Williams if no tort was committed by Hutchings and (3) Hutchings did not purposefully direct any activity at Michigan. His only contact was voting on a motion via a protected website from his home in Georgia.

Additionally, Hutchings did not make the motion to vote out Williams or initiate it. The vote was a closed on-line meeting for members only and it did not mention Michigan and was not directed at a Michigan audience. Hutchings did not write any libelous material about Williams. For these reasons, he claims that there are insufficient minimum contacts to meet the requirements of federal due process and therefore no limited personal jurisdiction.

2. Williams' Arguments

Williams says that jurisdiction over Hutchings is established under the Michigan long-arm statute subsections (1), (2), (3) and (5) of M.C.L.A. § 600.705 as follows: (1) the TNS's money and products are being handled in Michigan, (2) the damaging effect on Williams' reputation in the high I.Q. community, including Southeast Michigan

9

Mensa, (3) the majority of the TNS money has been in the Michigan bank and (5) the TNS publication is printed in Michigan.

In addition, Williams says that the Court has limited personal jurisdiction over Hutchings under the Sixth Circuit three part test: (1) the TNS, through those acting as officers, has purposely availed itself of the privilege of doing business in Michigan, (2) Williams' handling of the bank account in Michigan where TNS funds were deposited and paid out is the cause of action arising out of activities in Michigan and (3) there is no other state where the TNS had more connection during the relevant period is the substantial enough connection with Michigan.

### 3. Conclusion on Hutchings

Limited personal jurisdiction over Hutchings is lacking. Even if the Court were to find that Williams' claims satisfied the Michigan's long arm statute elements, in that the consequences of Hutching's actions occurred in Michigan, Hutchings' contacts are insufficient to satisfy due process. The only alleged contact that Hutchings had with respect to Williams was his vote online to expel Williams, and although Williams resides in Michigan, there was no action purposely directed at Michigan. As one court has stated, "[i]t was purely fortuitous that Michigan happened to be the place where the plaintiff was located." Lyndecon, L.L.C. v. First Acadiana Financial Services, L.L.C., 2002 WL 373116 *2 (E.D. Mich.)

Williams' argument that personal jurisdiction is established over Hutchings because the TNS money was located in a Michigan bank account and Hutchings sent money to the account in Michigan is not well-taken. The focus is not on the bank

account, or the TNS's contacts with Michigan, but rather Hutchings' contacts with Michigan. Moreover, Williams' statement that the TNS publication is printed in Michigan also does not support jurisdiction over Hutchings as he did not play any role in the authoring, editing or publishing of the article in question. Hutchings' only alleged role was in the online voting to expel Williams from the TNS and this action was not purposely directed at Michigan.

### B. Personal Jurisdiction over Paul D. Jensen

#### 1. Jensen's Arguments

Jensen says that he did not conduct any business in Michigan and therefore § 600.705(1) of the Michigan long arm statute does not apply to him. Jensen also argues that there are insufficient minimum contacts with Michigan. Jensen says that the only acts he is alleged to have engaged in -- posting an email on the ExCom discussion list and allegedly libeling Williams in his Regent's report in Vidya 246 – were not purposefully directed at Michigan or to a Michigan audience. There was no commercial undertaking directed at Michigan; Jensen was only part of a social group. Because the TNS itself is not a party to this suit, minimum contacts should be considered on an individual basis.

#### 2. Williams' Arguments

Williams first says that the jurisdictional amount exceeding $75,000 is met based on his loss of reputation and loss of opportunity for editing and publishing. He also claims that the TNS does attempt to earn a profit by selling memberships, membership certificates and products bearing the TNS logo. The TNS could not be named as a

11

defendant because the officers had prevented it from becoming a legal entity until early 2008. Williams references MCR 2.201(C)(3) which says that "A(n) . . . unincorporated voluntary association having a distinguishing name may sue or be sued in its . . . association name, in the names of any of its members designated as such, or both."

### 3. Conclusion on Jensen

Limited personal jurisdiction over Jensen is also lacking. Again, even if the requirements of the Michigan's long arm statute were met, the exercise of jurisdiction over Jensen does not comport with due process. Williams' arguments, set forth above, do not address Jensen's arguments. At best, Williams again improperly focuses on the TNS's contacts with Michigan, not Jensen's contacts with Michigan. The only action Jensen took was posting on the TNS website a statement that Williams was comingling TNS funds with personal funds in a Michigan bank account. Case law has shown that Jensen's mere posting to a website cannot be sufficient contact to establish limited personal jurisdiction. See Zippo Mfg. Co. v. Zippo Dot Corp, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Williams' argument that the TNS did attempt to make a profit does not support the argument of minimum contacts because the TNS was voluntary and non-profit at the time of the posting. Jensen has had insufficient minimum contacts with the state of Michigan to comport with due process and therefore no limited personal jurisdiction can be found.

### C. Personal Jurisdiction over Kevin Langdon

### 1. Langdon's Arguments

Langdon says he lives in California and has never resided in Michigan. Langdon

is part of a non-profit group that does not sell a product to Michigan consumers. For those reasons, he cannot have purposefully availed himself to a privilege of acting in Michigan. Second, Langdon argues that the actions that Williams alleges occurred while Langdon was in California, not Michigan, so they cannot arise from defendant's activities within the forum state. Third, Langdon says that personal jurisdiction would be unreasonable because Langdon argues he did not place a product into the stream of commerce. He only chats online with members of the group. Further, it would place undue burden on Langdon to travel to Michigan for any court hearings.

### 2. Williams' Arguments

Williams asserts essentially the same arguments in support of personal jurisdiction over Langdon as he did for Jensen and Hutchings. Williams says that the six defendants passed a motion based on false premises and that Jensen and Langdon refused to resolve the matter. Williams, however, does not provide any specific arguments to support his allegation that limited personal jurisdiction over Langdon has been established.

### 2. Conclusion on Langdon

There are insufficient minimum contacts for specific personal jurisdiction over Langdon. Like Hutchings and Jenson, Langdon did not purposefully direct his activities at Michigan. Even if Williams experienced the consequences of Langdon's actions in Michigan, by virtue of the fact that Williams lives in Michigan, exercising personal jurisdiction over Langdon in these circumstances is not consistent with due process.

### D. Remaining Defendants

As noted above, Schreiber and Stewart ere present at the hearing and joined in the motions to dismiss for lack of personal jurisdiction.

As to Stewart, Williams says that he emailed a defamatory statement to the ExCom internet discussion. Williams does not allege any specific acts by Schreiber. At the hearing, Williams claimed that all defendants were acting in concert and therefore personal jurisdiction was established.

For the same reasons stated above regarding Hutchings, Jenson and Langdon, neither Schreiber nor Stewart have purposely availed themselves of a Michigan forum such that the exercise of personal jurisdiction over them would be reasonable under the circumstances.

## V. Conclusion

For the reasons stated above, personal jurisdiction is lacking over all the moving defendants because none of them purposefully availed themselves or directed any activities toward the state of Michigan. Defendants' motions to dismiss are GRANTED. Only the unserved defendant, Stevan Damjanovic, remains in the case.

SO ORDERED.

Dated: July 10, 2008

 s/Avern Cohn  
AVERN COHN  
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

14

**08-10408 Williams v. Langdon, et al**

      I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Ed Schreiber, 4046 South Magnolia Way, Denver, CO 80237-2016 on this date, July 10, 2008, by electronic and/or ordinary mail.

                                              s/Julie Owens
                                              Case Manager, (313) 234-5160